Argued and submitted August 20, affirmed December 15, 2004

In the Matter of the Compensation of
Robert P. Krise, Jr., Claimant.

SAIF CORPORATION
and PKP Enterprises,
dba Horizon Restoration Systems,
*Petitioners,*

*v.*

Robert P. KRISE, Jr.,
*Respondent.*

01-01810; A119015

103 P3d 1146

David L. Runner argued the cause and filed the briefs for petitioners.

Donald M. Hooton argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

After claimant was terminated by his employer, PKP Enterprises, employer's insurer, SAIF Corporation, stopped his disability payments. Claimant appealed to the Workers' Compensation Board (board), which reversed the cessation of payments and remanded the claim to employer, ordering calculation, payment, and continuation of temporary disability benefits. Employer seeks judicial review, raising two assignments of error, only one of which merits discussion: employer argues that the board's opinion addresses only one of the two arguments employer presented and therefore lacks substantial reason. We conclude that employer presented only one argument to the board and that the board adequately addressed it. We therefore affirm.

The following facts are either not in dispute or were found by the board and are supported by substantial evidence. On November 9, 2000, claimant compensably injured his back when he lifted an air compressor out of a truck. He reported the injury, sought treatment, and received a medical release from work. Employer had a policy requiring an injured worker to deliver a copy of any medical report related to the injury within 24 hours of each doctor's appointment. Another policy required an injured worker to "report to your next scheduled shift once the doctor releases you to work (part-time, temporary, modified or regular)." Claimant faxed the reports after each of his four appointments between November 10 and 17. He had another appointment on the evening of November 20 at which the doctor released him to modified work. He faxed a report of that appointment to employer the next morning. Claimant did not report to work again, and on November 30, 2000, employer terminated his employment. The letter effecting the termination stated:

> "The failure to report following medical exams and failure to report to work or have absences excused for medical reasons constitutes 'Insubordination' pursuant to the * * * Handbook. As such it is grounds for immediate dismissal upon the first occurrence."

■     Employer then stopped paying temporary total disability compensation and began paying partial disability compensation at a zero rate, claiming entitlement to do so under ORS 656.325(5)(b) (2001), the statute in effect during the pertinent events. That statute provides:

> "If the worker has been terminated for violation of work rules or other disciplinary reasons, the insurer or self-insured employer shall cease payments pursuant to ORS 656.210 [temporary total disability] and commence payments pursuant to ORS 656.212 [temporary partial disability] when the attending physician approves employment in a modified job that would have been offered to the worker if the worker had remained employed, provided that the employer has a written policy of offering modified work to injured workers."

The dispute in this case centers on the question whether claimant was "terminated for violation of work rules." In particular, employer argues that claimant violated two work rules and the board addressed only one. Conceding for the purposes of judicial review that the board's conclusion regarding that one rule was correct, employer insists that the board's order is defective because it ignores the allegation regarding the second work rule. Claimant responds that employer never put violation of the second work rule at issue before the board with sufficient clarity, thereby waiving the right to assert that the board erred in not addressing it. In the alternative, claimant maintains that the board found as fact that employer's termination of claimant was based not on two rule violations but on one—the violation that the board addressed—and that the board's finding in that respect is supported by substantial evidence. We agree with claimant's first argument.

■     To preserve an issue for judicial review, a party must raise the issue in the proceedings below with sufficient clarity to put the board on notice of the need to rule on the issue and for the opposing party to address it. *Roy v. McCormack Pacific Co.*, 171 Or App 526, 531-32, 17 P3d 550 (2000), *adh'd to on recons,* 172 Or App 663, 667, 19 P3d 999 (2001). Before this court, employer insists that it argued to the board that

claimant was terminated for two different work rule violations: a failure to notify his employer of his November 20 doctor's appointment and a failure "to report to work or otherwise contact employer for ten days after his release for modified employment." We disagree.

Claimant received a termination letter from employer stating, in part:

> "When you were last in the office, we discussed you responsibility to report to us the findings and progress immediately following each and every physician's visit. * * * [Y]ou had an appointment on 11/20/2000 * * *. We have not heard from you since. We have no indication that your physician has required you to remain away from work beyond 11/20/2000.
>
> "Since we have not heard from you as required your absence has been unexcused from that time forward.
>
> "The failure to report following medical exams and failure to report to work or have absences excused for medical reasons constitutes 'Insubordination' pursuant to the * * * Employee Handbook. As such it is grounds for immediate dismissal upon the first occurrence."

This letter does not clearly specify the rules that claimant allegedly violated. It appears to imply two rules. The first required claimant immediately to report to employer any "findings and progress" resulting from a visit to a physician. That rule is not at issue; as noted above, the board found that defendant did not violate it, and that finding is supported by substantial evidence. The second rule required claimant to report to work unless he had a medical excuse not to do so.

These rules derive from the Employee Handbook and the Responsibilities document. With respect to the rules about claimant's obligation to return to work, the documents are not consistent. The Employee Handbook states:

> "If you are injured on the job and your doctor determines that you are able to perform modified work, the organization will attempt to provide you with such a job until you are able to resume your regular duties, except where provided as an accommodation for a disability. All modified work is temporary. *If you are offered a modified position that has been medically approved,* failure to report at the

designated time and place may affect time loss compensation."

(Emphasis added.) It is undisputed that employer never offered claimant a medically approved modified position. According to the Employee Handbook, then, he had no responsibility to report to work.

The Employee Handbook, however, does not stand alone. It is supplemented by an additional set of rules distributed to employees after they are injured, entitled Employee Responsibilities Regarding on the Job Injury/Accident ("the Responsibilities document"). Claimant received and signed a copy of the Responsibilities document a few days after his accident. The relevant rules in that document provide:

"4. Report your physician's findings immediately (within 24 hours) to your supervisor. Return the completed Work Release/Physical Capabilities form to your supervisor.

"5. Immediately (within 24 hours) report to your supervisor your progress or findings after each subsequent physician's visit or other treatment. The Work Release/Physical Capacities form should be completed at each physician visit and returned to your supervisor.

"6. *You must report to your next scheduled shift once the doctor releases you to work (part-time, temporary, modified or regular).*"

(Emphasis added.)

At the hearing before the administrative law judge, employer acknowledged that the information in the Responsibilities document is a significant variation on the Employee Handbook provisions. Specifically, while the Employee Handbook makes clear that employer expects an employee to return to work after he or she is released to modified work and is offered a medically approved modified position, the Responsibilities document provides that an employee must report to work at the next scheduled shift after getting a work-release from a doctor whether or not the employee has received a modified work position and medical approval.

Without the Responsibilities document, then, the Employee Handbook would clearly establish that claimant

had a responsibility to come to work only after receiving an offer of a medically approved modified position; because he received no such offer, he did not violate the rule. The clarity is muddled, however, by the Responsibilities document, which imposes a rule that he *did* violate. Needless to say, the expectations on claimant and the reasons for his termination were unclear. At the hearing, employer attempted to explain:

"Q [Claimant's Counsel]: Okay. And you've testified you didn't receive a fax from Mr. Krise.

"A: Correct.

"Q: And you didn't receive a phone call from Mr. Krise.

"A: Correct.

"Q: And you didn't—

"A: You're referring to following the appointment.

"Q: Following—well, following November 20th.

"A: Correct.

"Q: Okay. And you didn't speak with Mr. Krise directly, that is you didn't initiate a call to him.

"A: Correct.

"Q: Okay. So then how is it that you knew that he was released for modified employment?

"A: When I found out from SAIF.

"Q: Okay. Then how was it that you could terminate him for not communicating if you didn't know that he was released until December 19th?

"A: I terminated him as I indicated in the letter because I was aware that he had an appointment on the 20th, and he had an obligation to report the findings of that appointment on the 20th.

"Q: So in other words, you assumed that there was an—

"A: And I think I wrote in the letter that, you know, we had no reason to believe that—you know, whether he's excused from work after the 20th since we have no follow-up."

In its brief to the board, employer explained the reason that it terminated claimant:

> "First, the Employment Department also found that the employer had no record of receiving that fax. It also found that claimant did not contact the employer again and after his doctor had released him for modified work. These facts in concert indicate that the employer's termination was reasonable. Second, the issue in this case is whether claimant was terminated for violating a work rule. Claimant does not dispute that this is what the termination amounts to. Claimant failed to contact the employer again after sending the fax and receiving no response, even though nine days elapsed from the time of sending the fax [and] the eventual termination. *Claimant should have contacted his employer to discuss his return to work. The employer had made quite clear that it expected claimant to keep in touch. Claimant violated that rule.* Thus, the termination was for violation of a work rule, regardless of whether or not claimant sent the fax."

(Emphasis added.)

In light of the imprecise termination letter, the Employee Handbook, the Responsibilities document, the testimony at hearing, and employer's brief, the reasons for claimant's termination are reasonably understood to be failing to fax the report from his doctor within 24 hours following his appointment on November 20, 2000, and failing to contact employer following that appointment, a reason that is not entirely distinct from the first. Employer never suggested in clear terms that claimant's failure to come back to work was a violation of a work rule. That suggestion appears first in employer's reply brief on appeal:

> "Employer's argument to the Board was more than adequate to raise both grounds for employer's termination of claimant's employment. In its brief to the Board, under the heading 'Claimant was terminated for violating a work rule,' employer argued both that it had not received claimant's fax regarding his November 20, 2000 medical treatment, and that claimant had 'failed to contact the employer for ten days' after his doctor had released him for modified work. Employer cited both its written statement of rules, and its letter terminating claimant's employment. At the end of this section of its argument, employer said:

'Employer made it quite clear that it expected claimant to keep in touch. Claimant violated that rule. Thus, the termination was for violation of a work rule, regardless of whether or not claimant sent the fax.'

"This statement plainly and unambiguously raises claimant's violation of employer's rule requiring claimant to 'keep in touch' independent of whether claimant also violated employer's rule regarding 24-hour notification of medical findings, which claimant alleged he had done by fax. In context, the reference to 'keeping in touch' *is obvious shorthand for the rule that claimant report to employer at the shift following a doctor's release for work.*"

(Emphasis added; record citations omitted.) Only on judicial review did employer state that claimant's failure to report for work at the next shift was a reason for his termination. Employer continued to use the phrase "keep in touch" but altered the meaning of the phrase. Before the board, not "keeping in touch" meant failing to contact employer following the physician's appointment, while on judicial review the phrase referred to claimant's obligation to report in person for work at the next shift following a physician's release.

Employer's argument that the board erred by ignoring the second reason for termination is therefore unpersuasive. At the time of board review, employer had not identified claimant's failure to report to work in person as a reason for termination. The board rejected both reasons that insurer did argue—that claimant did not fax the report and that he did not "keep in touch"—by finding that claimant had in fact faxed the report from his doctor to employer, and that that act amounted to the requisite contact with employer. Employer's argument that claimant did not personally report to work was not preserved; the claim that the board erred by not addressing that argument therefore fails.

Affirmed.